IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**THOMAS STONE**                                                                         **PLAINTIFF**
**ADC #090693**

v.                                   No: 5:16-cv-00112 JLH-PSH

**SHERION PENISTER**                                               **DEFENDANTS**

**PROPOSED FINDINGS AND RECOMMENDATION**

**INSTRUCTIONS**

The following Proposed Findings and Recommendation have been sent to United States District Judge J. Leon Holmes. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**DISPOSITION**

**I. Introduction**

Plaintiff Thomas Stone, an inmate in the custody of the Arkansas Department of Correction ("ADC"), filed this *pro se* civil rights complaint against Sergeant Sherion Penister, an ADC employee. *See* Doc. No. 1. Stone does not indicate whether he sues Penister in her official and/or individual capacities. *Id.* Stone also does not specify what relief he seeks. *Id.* Stone alleges that Penister used excessive force against him in an incident at the ADC's Tucker Maximum Security

Unit. Specifically, Stone alleges that during pill call, Penister reached through his cell door and hit his left ear and then sprayed him despite no provocation. *Id.* at 1.

Before the Court are Defendant Penister's motion for summary judgment, supporting brief, and statement of undisputed material facts (Doc. Nos. 26-28). Stone did not file a response to Penister's motion although he filed two notices addressed to a Mr. Arnold stating that he did not understand letters he had received and that he needed a lawyer. *See* Doc. Nos. 30 & 31.[1] Because Stone failed to controvert the facts set forth in Penister's statement of undisputed facts, Doc. No. 28, those facts are deemed admitted. *See* Local Rule 56.1(c). Penister's statement of facts, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute and that Penister is entitled to summary judgment as a matter of law.

## II. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is

---

[1] It appears that the letter docketed at Doc. No. 31 refers to another case, *Stone v. Clark*, No. 5:17-cv-0097.

such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Undisputed Facts

The undisputed facts listed below were submitted by Defendant Penister and are supported by the following documents attached to Penister's statement of undisputed facts: Stone's status assignment sheet (Doc. No. 28-1); the Declaration of Sharon Penister (Doc. No. 28-2) which includes copies of two disciplinaries received by Stone on February 14, 2016; an incident report by Captain Everett Litzsey describing an incident occurring on February 14, 2016 (Doc. No. 28-3); an incident report by Sergeant Darnzell Miller describing an incident occurring on February 14, 2016 (Doc. No. 28-4); a Condensed Health Services Encounter report covering Stone's medical encounters from February 8, 2016, to February 22, 2016 (Doc. No. 28-5); Stone's written responses to Penister's first set of interrogatories (Doc. No. 28-6); and the Declaration of Nathan Ware (Doc. No. 28-7). Stone has not refuted these facts or challenged the admissibility of the supporting documents.

1. Thomas Stone is an inmate incarcerated in the ADC. Doc. No. 28-1 at 1.

2. Stone was housed at the Maximum Security Unit in Tucker, Arkansas when he filed this case. Doc. No. 1 at 1.

3. Stone was housed at the Maximum Security Unit on February 14, 2016. Doc. No. 28-1 at 1.

4. Stone was housed in Cellblock 8, cell 5. *Id.* at 2.

5. His cell was located on the bottom tier. Doc. No. 28-2 at 3.

6. Sherion Penister is a Sergeant employed by the ADC. *Id.* at 1.

7. At approximately 12:30 p.m. on February 14, 2016, Defendant Penister was conducting a security round inside Cellblock 8. *Id.* at 3.

8. While she was conducting her security check, she observed Stone in his cell, staring at her. *Id.*

9. Stone then yelled at Penister using profanity and a racial slur. *Id.*

10. Penister gave Stone a direct order to stop yelling profanity, but he refused. *Id.*

11. Penister left the cellblock. *Id.*

12. That same day, at approximately 2:00 p.m., Penister again entered the Cellblock 8. *Id.* at 8.

13. She was present to assist staff in passing out meal trays and to escort Nurse Nathan Ware around the cellblock for pill call. *Id.* at 1, 8.

14. As she approached Stone's cell, Stone picked up his state-issued drinking cup and dipped it into the toilet. *Id.* at 8.

15. Stone then "dashed" her with toilet water on the right side of her face and shoulder area. *Id.*

16. Stone again directed profanity and a racial slur at Penister and said he would "get her" as he started to get another cup of unidentified liquid. *Id.*

17. Penister ordered Stone to not pick up another cup of liquid or he would be sprayed. *Id.*

18. Stone did not stop, so she sprayed one burst of chemical agent (pepper spray) into his cell. *Id.*

19.     Stone did not dash Penister again.  *Id.*

20.     Penister did not spray Stone again.  *Id.*

21.     Once Stone had stopped, Penister removed herself from the situation and notified her supervisor, Captain Everett Litzsey.  Doc. No. 28-3 at 2.

22.     Stone was removed from his cell by Captain Litzsey and Sergeant Miller and escorted to Isolation.  *Id.;* Doc. No. 28-4 at 2.

23.     Stone was placed in the shower and afforded a shower to decontaminate.  Doc. No. 28-2 at 8; Doc. No. 28-3 at 2; Doc. No. 28-4 at 2.

24.     Medical infirmary staff was notified.  *Id.*

25.     Nurse Rebekah Whiley saw Stone while he was in the shower for his pre-lockup assessment.  Doc. No. 28-5 at 3-4.

26.     Stone complained of not being able to breathe.  *Id.* at 3.

27.     Nurse Whiley noted the following: "Inmate is alert and oriented hostile behavior face flushed and nose draining due to contact with chemical agents."  *Id.*

28.     No complaints about ear pain were documented.  *Id.*

29.     The following day, Nurse Christina Robinson conducted a segregation visit, at which time she encountered Stone.  *Id.*

30.     Her records do not indicate any complaints of ear pain, and her record states "Inmate voiced no complaints."  *Id.*

31.     Stone was seen twice more during segregation rounds on February 15, 2016, and no complaints were noted.  *Id.*

32.     Stone was seen twice on February 16, 2016, by medical staff during segregation rounds, and no complaints were noted.  *Id.* at 2.

33.     Also on February 16, 2016, Stone was notified by Officer Carlton of the two major disciplinaries issued to him by Penister on February 14, 2016.  Doc. No. 28-2 at 3.

34.     The first disciplinary was for the 12:30 p.m. incident. Stone was charged with (a) creating unnecessary noise; (b) insolence to a staff member; and (c) failure to obey order of staff. *Id.*

35.     The second disciplinary was for the 2:00 p.m. "dashing" incident. Stone was charged with (a) assault – verbal or written threat; (b) throwing/ejecting of bodily fluids/excrement striking person; (c) unauthorized use of state property; and (d) failure to obey order of staff. *Id.* at 8.

36.     On February 18, 2016, Stone appeared before Disciplinary Hearing Officer Justine Minor on both of his disciplinaries. *Id.* at 4, 9.

37.     Stone was allowed to make a statement and present a defense to all of the charges against him. *Id.*

38.     At the conclusion of the first hearing, Stone was found guilty of all three charges. *Id.* at 4.

39.     He was reduced in Class to Class IV and sentenced to 15 days in isolation. *Id.*

40.     At the conclusion of the second hearing, he was found guilty of three of the four charges. *Id.* at 9.

41.     He was reduced to Class IV and was sentenced to 30 days in isolation. *Id.*

42.     Upon the conclusion of both hearings, Stone was seen by Nurse Sarah Rhodes for his pre-lockup assessment.  Doc. No. 28-5 at 1-2.

43.     Stone did not report any injuries of hearing difficulties to staff at that time. *Id.*

6

44.     Stone was seen by Nurse Robinson on February 19, 2016, and February 22, 2016, and did not report any pain or injuries to her. *Id.* at 1.

45.     It was not until 12:50 p.m. on February 22, 2016, that Stone reported complaints of outside ear pain. *Id.*

46.     The medical record notes no redness or swelling, no drainage, and no hearing issue. *Id.*

47.     When asked in discovery what witnesses he had to support his allegations, Stone identified Nurse Nathan Ware. Doc. No. 28-6 at 1.

48.     Nurse Ware has never seen or witnessed Penister strike Stone. Doc. No. 28-7 at 2.

49.     Penister did not strike Stone. *Id.*; Doc. No. 28-2 at 1.

50.     Stone's medical records do not support Stone's claim that he was injured whatsoever on February 14, 2016. Doc. No. 28-5.

### IV. Analysis

#### A.     Sovereign Immunity

Penister correctly asserts any monetary claims asserted by Stone against Penister in her official capacity are barred by sovereign immunity. A suit against a defendant in his or her official capacity is in essence a suit against the State of Arkansas, and any official capacity claim for monetary damages against that defendant is barred by the doctrine of sovereign immunity. *Will v. Michigan Department of State Police, et al.*, 491 U.S. 58, 71 (1989); *Nix v. Norman*, 879 F.2d 429, 431-432 (8th Cir. 1989). Accordingly, the undersigned recommends that Penister's motion for summary judgment be granted and Stone's official capacity claims be dismissed.

#### B.     Qualified Immunity

Penister does not state that he is suing Penister in her individual capacity; accordingly, it is presumed that he is suing Penister in her official capacity only. *See Johnson v. Outboard Marine*

7

*Corp.,* 172 F.3d 531, 535 (8th Cir. 1999); *see also Artis v. Francis Howell North Band Booster Ass'n., Inc., 161 F.3d 1178, 1182* (8th Cir. 1998) ("If the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity"). Nevertheless, the Court also addresses Penister's arguments that she is entitled to qualified immunity with respect to any individual capacity claims Stone may be asserting.

Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law and is appropriately resolved on summary judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The unnecessary and wanton infliction of pain violates the Eighth Amendment's prohibition on cruel and unusual punishment. "Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the 'core judicial inquiry' is whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jones v. Shields*, 207 F.3d 491, 495 (8th Cir. 2000) (quoting *Hudson v. McMillian,* 503 U.S. 1, 6–7). "Factors which inform this inquiry include the need for

the application of physical force; the relationship between the need for physical force and the amount of force applied; and the extent of injury suffered by the inmate." *Id.* Unless "'it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain . . . the case should not go to the jury.'" *Johnson v. Bi-State Justice Ctr./Arkansas Dep't of Corr.*, 12 F.3d 133, 136 (8th Cir. 1993) *(citing Whitley,* 475 U.S. at 322).

Stone asserts that Penister put her hands through his cell door and hit him on his left ear while he was getting his pills from Nurse Ware. He also claims that Penister sprayed him although he did not provoke her. Penister denies that she has ever hit Stone, and the record on summary judgment shows that she did not. Nurse Ware is the only witness identified by Stone, and Nurse Ware submitted a declaration stating that Penister did not strike Stone. Stone's medical records also show that he did not make any complaint of being struck or having ear pain until more than a week later.

Further, the record shows that Penister's use of a chemical spray was in response to Stone "dashing" Penister with toilet water. Accordingly, the spray was used to maintain or restore discipline; there is no evidence to support an inference of wantonness. Penister used the spray once; Stone stopped the offending behavior; and Penister removed herself from the situation. Stone was subsequently allowed to shower and was seen by medical staff. Stone was also afforded a disciplinary hearing and was found guilty of three of the four charges resulting from the incident involving the chemical spray. These facts are unrefuted, and accordingly, there is no issue for trial. Summary judgment is appropriate with respect to Stone's claim that Penister used excessive force.

## IV. Conclusion

The undersigned recommends that Penister's motion for summary judgment be granted. Stone's official capacity claims for money damages are barred by the doctrine of sovereign immunity. Further, Penister is entitled to qualified immunity on Stone's individual capacity claims because the undisputed material facts show that Penister did not use excessive force against Stone.

IT IS THEREFORE RECOMMENDED THAT:

1. Penister's motion for summary judgment (Doc. No. 26) be GRANTED, and Stone's claims against her be DISMISSED WITH PREJUDICE.

2. The Court certify that an *in forma pauperis* appeal taken from the order and judgment dismissing this action is considered frivolous and not in good faith.

DATED this 3rd day of January, 2018.

_____
UNITED STATES MAGISTRATE JUDGE